# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

IN RE:

**SAN JUAN RESORT OWNERS, INC.**

Debtor

CASE NO.  15-01627 (MCF)

CHAPTER 11

## PLAN OF REORGANIZATION

WILLIAM VIDAL CARVAJAL, ESQ.
USDC-PR 124803
MCS Plaza, Suite 801
Ponce de León Ave.
San Juan, PR  00918
Tel.: 787-764-6867
Fax: 787-764-6496
E-mail: william.m.vidal@gmail.com

San Juan Resort Owners, Inc. ("San Juan Resort"), Debtor and Debtor-in-possession in the above captioned case ("Debtor") hereby propose the following Plan of Reorganization (the "Plan") under Section 1121 of Title 11 of the United States Code.

## ARTICLE I

### DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article I.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

Notwithstanding the above and the definitions detailed below, the Sale Motion and Banco Popular de P.R. ("BPPR") Settlement Agreement (the "Agreement") are incorporated herein as if set forth in full in this Plan and notwithstanding anything to the contrary, the terms of the Sale and Agreement with BPPR are as set forth and detailed in the BPPR Settlement Agreement and the Sale Motion.

"Administrative Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation:

(a)     fees and expenses of Professionals Allowed pursuant to a Final Order entered under Sections 330, 331, or 503 of the Bankruptcy Code, and

(b)     all fees and charges assessed against Debtor pursuant to 28 U.S.C. §1930.

"Allowed" shall mean, with reference to any Claim:

(a)     a Claim that has been listed by the Debtor in its Schedules, as amended, and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)     a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been Allowed (whether in whole or in part) by a Final Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and Allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)     any Claim expressly Allowed under the Plan or pursuant to the Confirmation Order.

"Bankruptcy Case" shall mean the Debtor's Chapter 11 case pending in the Bankruptcy Court.

"Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Puerto Rico where the Bankruptcy Case is pending.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. §2075, and any local rules of the Bankruptcy Court.

"Bar Dates" shall mean July 9, 2015 and September 8, 2015, as to Debtor's Bankruptcy Case, respectively fixed as the last dates for the filing of proof of claims by creditors asserting Claims against the Debtor, other than governmental units, and by governmental units, as stated in the "Notices of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines" dated March 9, 2015, issued by the Clerk of the Bankruptcy Court, or otherwise be forever barred from asserting a Claim against Debtor or its property and from voting on the Plan and/or sharing in distributions under the Plan.

"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Puerto Rico.

"BPPR" shall mean Banco Popular de Puerto Rico.

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, and money orders).

"Causes of Action" shall mean, without limitation, any and all actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity, or otherwise.

"Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is

Case:15-01627-MCF11 Doc#:51 Filed:04/17/15 Entered:04/17/15 12:23:56 Desc: Main
Document Page 5 of 29
San Juan Resort Owners, Inc.
Plan of Reorganization
Case No. 15-01627 (MCF)
Page 5

fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claims Objection Bar Date" shall mean the later of (1) the date that such claim becomes due and payable in accordance with its terms, or thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of Debtor's Plan.

"Claims Objection" means the objections to claims that have been or may be filed against the Holders (or purported Holders) of Claims.

"Class" shall mean those classes designated in Article III of the Plan.

"Collateral" shall mean (a) any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this Bankruptcy Case.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code.

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"Debtor" shall mean San Juan Resort Owners, Inc.

"Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits, and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disputed Claim" shall mean:

(a)       if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)       if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

(c)       a Claim which is a Contingent or Unliquidated Claim.

"Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

"Disputed Claims Reserve" shall have the meaning set forth in Section 6.5 hereof.

"Distribution Record Date" shall mean the Business Day preceding the Effective Date.

"Effective Date" shall mean the date which is sixty (60) days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Article X of the Plan have not been satisfied or waived pursuant to Section 10.2 of the Plan, then the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

"Equity Holder" shall mean Mr. Luis A. Carreras Pérez and Boutique Hotels, Inc., holders of the Equity Interest in San Juan Resort Owners, Inc.

"Equity Interest" shall mean the interest of any holder of common equity securities of San Juan Resort, and all options, warrants and rights, contractual or otherwise, to acquire any such equity securities in San Juan Resort, as such interests exist immediately prior to the Effective Date.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and no appeal or petition for *certiorari*, review or rehearing is pending, or (ii) if an appeal, review, reargument or *certiorari* of the order has been sought, the order has been affirmed or the request for review, reargument or *certiorari* has been denied and the time to seek a further appeal, review, reargument or *certiorari* has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under Section 507 of the Bankruptcy Code.

"Holder" shall mean a Person or Entity who holds a Claim or Interest.

"Initial Distribution Date" shall mean the date at least sixty (60) days after the Effective Date, or the next succeeding Business Day if such thirtieth day is not a Business Day when funds are available for distribution.

"Internal Revenue Code" shall mean Title 26 of the United States Code, as amended from time to time.

"Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code, except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549, or 553 of the Bankruptcy Code shall not constitute a Lien.

"Orders of Relief" shall mean the date of the entry of the orders of relief.

"Organizational Documents" shall mean the corporate bylaws, amended certificate of incorporation, as the case may be, together with all other corporate documents of San Juan Resort necessary to effectuate the provisions of the Plan. In accordance with Section 1123(a)(6) of the Bankruptcy Code, Debtor's certificate of incorporation will prohibit the issuance of non-voting equity securities until such time as all payments have been made under the Plan and all other obligations of San Juan Resort or the Reorganized Debtor under the Plan have been satisfied or discharged.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision thereof.

"Petition Date" shall mean March 5, 2015, the date on which Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court, pursuant to the Bankruptcy Code.

"Plan" shall mean this Plan of Reorganization under Chapter 11 of the Bankruptcy Code, including, without limitation, the Plan Documents, if any, and all exhibits, supplements, appendices and schedules hereto and thereto, either in their present form or as the same may be altered, amended or modified from time to time.

"Plan Documents" shall mean and include such agreements, instruments, and documents as may be required to effectuate the terms of this Plan.

San Juan Resort Owners, Inc.                                    Case No. 15-01627 (MCF)
Plan of Reorganization                                                         Page 9

"<u>Priority Claims</u>" shall mean any and all Claims (or portions thereof), entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

"<u>Priority Tax Claims</u>" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"<u>Professionals</u>" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

"<u>Reorganized Debtor</u>" shall mean Reorganized San Juan Resort.

"<u>San Juan Resort</u>" shall mean San Juan Resort Owners, Inc.

"<u>Schedules</u>" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

"<u>Secured Claim</u>" shall mean any Claim that is secured by Collateral, to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

## ARTICLE II

## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

**2.1**   <u>Non-Classification</u>. In accordance to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on, or receiving distributions under the Plan. All such Claims are instead treated separately in accordance with the terms set forth in this Article I hereto.

**2.2**   <u>Administrative Expense Claims.</u>

(a)   <u>General</u>. Except as otherwise agreed to by Debtor and the holder of an Allowed Administrative Expense Claim, including the estimated notarial fees and transfer costs from the sale of Debtor's assets, as explained below, each such holder shall be paid in full in Cash in the regular course of business or as authorized by the Court on or before the Effective Date, from the Carve Out agreed with BPPR.

If Debtor disputes any portion of an Administrative Expense Claim, Debtor shall pay such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim. Debtor will reserve the necessary funds to meet these payments.

(b)   <u>U.S. Trustee's Fees</u>. The United States Trustee's quarterly fees shall be paid in full without prior approval pursuant to 11 U.S.C. § 1930 on or before the Effective Date, when due.

(c)   <u>Professionals Compensation and Expense Reimbursement Claims</u>.

(1) Professionals shall file final applications for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date within thirty (30) days thereafter. Any award granted by the

Bankruptcy Court shall be paid (i) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, or (ii) upon such other terms as may be mutually agreed upon between the holder of an Allowed Administrative Expense Claim and Debtor or the Reorganized Debtor.

(2) All fees and expenses of Professionals for services rendered after the Confirmation Date in connection with the Bankruptcy Case and the Plan including, without limitation, those relating to the occurrence of the Effective Date, shall be paid by Debtor or the Reorganized Debtor upon receipt of reasonably detailed invoices therefore in such amounts and on such terms as such Professionals and Debtor or the Reorganized Debtor may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

2.3 **Priority Tax Claims.** Priority Tax Claims consists of Claims entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code. Such Priority Tax Claims consist principally of room taxes owed to the Tourism Company of Puerto Rico and the Secured Claim of CRIM.

The Holders of Allowed Priority Tax Claims, basically composed of Room Taxes due to the Tourism Company of Puerto Rico and the secured claim of CRIM, will be paid in full (as may be reduced to an acceptable amount to such Holders of Allowed Priority Tax Claims) in cash, on or before the Effective Date of the Plan, from the Carve-Out agreed to as part of the Sale Motion (Docket No. 21). The estimated potential Priority Tax Claims are listed in Exhibit D to Debtor's Disclosure Statement.

### ARTICLE III

### CLASSIFICATION OF CLAIMS AND EQUITY INTEREST

As of the Petition Date, Debtor had secured and non-priority unsecured debt, as more particularly described below. The Plan classifies the various claims against Debtor. A description of all classes of Claims and the Equity Interest, the estimated principal amounts of each Class as of the Effective Date, and its treatment are set forth below. The Classes of Claims

and the Equity Interest established in the Plan are as follows:

Class 1 – <u>The Claim of Banco Popular de Puerto Rico ("BPPR")</u> Class 1 shall consist of the Allowed Claim of BPPR arising from a loan partially secured by a first mortgage on Debtor's real estate, accounts receivable, and other assets.

Class 2 – <u>The Claim of General Unsecured Claims</u> Consists of the Holders of Allowed General Unsecured Claims.

Class 3 – <u>Interest in San Juan Resort</u> shall consist of Holders of the Equity Interests in San Juan Resort, as defined above.

## ARTICLE IV

## TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTEREST

Class 1 - <u>The Claim of Banco Popular de Puerto Rico</u>

(a)  <u>Impairment and Voting</u> – Class 1 is impaired under the Plan. BPPR is entitled to vote to accept or reject the Plan.

(b)  <u>Distribution</u> – Subject to the approval of Debtor's Motion for the Sale of Assets and of the Bidding Procedures attached to Debtor's Disclosure Statement as the Exhibit AA-1 and AA-2, respectively, Debtor's Plan contemplates the sale of substantially all of its assets, basically composed of Debtor's real estate, under the provisions of 11 U.S.C.§363(b), for an amount not less than $9,039,557, free and clear of all liens and encumbrances. The sale transaction will also contemplate the sale of certain assets of a Debtor's Affiliate (Premier Hotel Management, Inc.), in the amount of approximately $410,443.00. , needed for the operations of the Hotel.

From the proceeds of the sale of Debtor's assets and specifically the Carve-Out (as

defined in the BPPR Settlement Agreement), Debtor will pay in cash 100% of the Allowed Administrative Expense Claims, 100% of the Allowed Priority Tax Claims (Secured and Unsecured)(as may be reduced by agreement with the Holders of such Allowed Priority Tax Claim), and a net and minimum Settlement Payment (as defined in the BPPR Settlement Agreement) of $7,855,869[1] to BPPR as per the agreement reached with this secured creditor as further disclosed in the Exhibit AA-3 to Debtor's Disclosure Statement, and will reserve a carve-out of approximately $50,000, to pay the Allowed General Unsecured Claims on a pro-rata basis. BPPR's deficiency claim will be dealt under Class 2 of General Unsecured Creditors, entitled to vote under such Class, but, subject to the satisfaction of the terms and conditions under the BPPR Settlement Agreement, not receiving dividends out of the carve out reserved for the General Unsecured Creditors. If a result of the Bidding Procedures, the sale price for Debtor's assets is increased or there is any saving in the estimated transfer costs, the increase in sales price and/or excess over the carve outs set forth above will be paid to BPPR.

Class 2 - Holders of General Unsecured Claims

(a)    Impairment and Voting - Class 2 is impaired under the Plan. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

(b)    Distribution – The Holders of Allowed General Unsecured Claims, including those arising from rejected executory contracts, subject to the satisfaction of the terms and conditions of the BPPR Settlement Agreement, and as to distributions only, excluding BPPR's deficiency claim, will be paid in full satisfaction of such

---

[1] A difference of $2,061.00 exists between this amount and that reflected in the Sale Motion. This difference will be paid by the Debtor from the balance of its Debtor in Possession bank account on or before the Effective Date of the

Claims on the Effective Date .5% approximately of their allowed claims, from the $50,000 carve-out to be reserved from the proceeds of the sale of Debtor's assets as set forth above.

Class 3- <u>Interests in Debtor</u>

(a)    <u>Impairment and Voting-</u> Class 3 is impaired under the Plan, is deemed to have rejected the Plan due to the treatment indicated below, as provided for in Section 1126 (g) of the Bankruptcy Code.

(b)    <u>Treatment-</u> The Holders of the Equity Interests in Debtor will not receive any distributions under the Plan.  Debtor's common shares will be cancelled within 120 days from the Effective Date, as Debtor's operations will cease after the sale of its assets.

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

Except as otherwise provided for in the Plan, Debtor will effect payments of pending Administrative Expense Claims, on or before the Effective Date.  Priority Tax Claims will be paid in full in cash, on the Effective Date.  General Unsecured Claims will be paid on a pro-rata basis, out of the carve-out amounting to $50,000, on the Effective Date.  All of the aforementioned Allowed Claims will be paid from the carve-out negotiated with BPPR.  These claims, as well as BPPR's claims, will be paid from funds arising from the sale of Debtor's assets.

Plan.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

**6.1      Method of Distributions under the Plan.**

(a)      <u>In General</u>.  Subject to Bankruptcy Rule 9010, all distributions under the Plan to the Holders of Allowed Claims shall be mailed by first class mail, postage prepaid, to the address of each Holder as listed on the Master Address List of the Bankruptcy Case, as the same may have been amended, as of the Distribution Record Date, unless Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of a Claim filed by a Holder of an Allowed Claim that provides an address for such Holder different from the address reflected on the Master Address Lists.

Debtor shall have no obligation to locate such Holders of Allowed Claims whose distributions or notices are properly mailed but nevertheless returned.

(b)      <u>Distribution to be on Business Day</u>.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(c)      <u>Fractional Dollars</u>.   Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of less than $0.50, and rounding up in the case of more than $0.50).

(d)      <u>Distribution to Holders as of the Distribution Record Date</u>.  As of the close of business on the Distribution Record Date, the claims register shall be closed.  Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes

under the Plan with only those Holders of record as of the close of business on the Distribution Record Date, unless otherwise provided for by order of the Bankruptcy Court.

**6.2** **Objections to Disputed Claims**. Any objections to Claims or complaints against Debtor shall be prosecuted by the Debtor, including any application to estimate or disallow Claims for voting purposes.

**6.3** **Deadlines for Objecting to Disputed Claims**. Except as otherwise provided by order of the Bankruptcy Court with respect to any Claim, the Debtor may file an objection to such Claim or otherwise dispute such Claim until the later of (i) the date that such Claim becomes due and payable in accordance with its terms, or (ii) thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan.

**6.4** **Estimation of Claims**. Debtor, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning the Claim or an objection thereto. Debtor shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation in reference thereof. If the Bankruptcy Court determines the maximum limitation of such Claim, the determination shall not preclude Debtor from pursuing any additional proceedings to object to any ultimate payment of the Claim. If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan. All those proceedings are cumulative and not exclusive remedies.

**6.5**    **Disputed Claims Reserve.**

(a)    <u>Establishment</u>. Debtor shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the distributions to which holders of the respective Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or for such lesser amount as required by a Final Order.

(b)    <u>Investment of Cash</u>.   Cash in the respective Disputed Claims Reserve may be invested by Debtor only in Cash Equivalents having maturities sufficient to enable Debtor to make all necessary payments to holders of Disputed Claims, in accordance to this Plan, if and when, such Disputed Claims become Allowed Claims.   Any interest, income, distributions, or accretions on account of such investment in Cash Equivalents shall be for Debtor's benefit and account, and the payment of any income taxes or other taxes arising therefrom shall be solely the responsibility of Debtor.

(c)    <u>Distribution upon Allowance of Disputed Claims</u>.   The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.   Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date.   No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve, Debtor with respect to such Claim until the Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on the Disputed Claim.

**6.6** **Reversion of Unclaimed Checks and Disputed Claims Reserve.** The following amounts shall revert and be vested in the Debtor, as to the claims to be paid under the Plan, free and clear of any claim or interest of any Holder of that Claim under the Plan: (i) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of 90 days after the date of the distributions, and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to the Disputed Claim, over the amount of Cash actually distributed on account of such Disputed Claim.

**6.7** **Good Standing.** To the extent San Juan Resort is not in compliance as of the Effective Date with any state or local law requirements necessary to remain a corporation in good standing and/or remain authorized as a corporation to conduct business in any jurisdiction, San Juan Resort, shall be deemed to be in compliance with any such laws if they comply therewith within six months after the Effective Date.

## ARTICLE VII

## VOTING ON THE PLAN

**7.1** **Voting of Claims.** Each holder of an Allowed Claim in an impaired Class which receive payments under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**7.2** **Nonconsensual Confirmation.** If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided for in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan,

Debtor reserve the right (i) to confirm the Plan under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan in accordance with Section 12.3 hereof to the extent necessary to obtain the entry of a Confirmation Order.

## ARTICLE VIII

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND POST-PETITION CONTRACTS

**8.1**   **Rejection of Executory Contracts and Unexpired Leases**. Any executory contract or unexpired lease which (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed, as disclosed in Debtor's Disclosure Statement, assigned, or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending on the Confirmation Date, shall be deemed rejected on the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

If the rejection of such an executory contract or unexpired lease results in a claim for damages by the other party or parties to such contract or lease, any claim for such damages, if not evidenced already by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor on or before forty-five (45) days following the Confirmation Date.  Debtor retains the right to object to any rejection damages claims filed in accordance with this Section.

**8.2**   **Rejection Damage Claims**.  If the rejection of an executory contract or unexpired lease pursuant to Section 8.1 hereof results in a claim for damages to the other party or parties to such contract or lease, any claim for such damages, if not evidenced by a filed proof of claim, shall be

forever barred and shall not be enforceable against Debtor, or its properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor or the Reorganized Debtor on or before forty-five (45) days following the Confirmation Date.  Debtor retains the right to object to any rejection damage claim filed in accordance with this Section.

**8.3**    **Post-Petition Agreements Unaffected By Plan**.  Except as otherwise expressly provided herein, nothing contained in the Plan shall alter, amend or supersede any agreements or contracts entered into by Debtor after the Petition Date that were otherwise valid, effective and enforceable against Debtor as of the Confirmation Date.

## ARTICLE IX

## RELEASE AND DISCHARGE OF CLAIMS

**9.1**    **Discharge**.  Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement, release and discharge of the Debtor of any debt of Debtor that arose before the Effective Date, and any debt of Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against Debtor of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt, obligation or equity interest is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Plan.

**9.2**    **Injunction Relating to the Plan**.  As of the Effective Date, all Persons will be permanently enjoined from commencing or continuing, in any manner or in any place, any action

or other proceeding, whether directly, indirectly, derivatively or otherwise against Debtor, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

**9.3     Cancellation of Existing Indebtedness and Liens**.    Except as may otherwise be provided for in the Plan, on the Effective Date, all credit agreements, promissory notes, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, shall be cancelled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, and Debtor's obligations thereunder shall be deemed cancelled, discharged and released.    To the extent deemed necessary or advisable by Debtor, any holder of a Claim shall promptly provide Debtor with an appropriate instrument of cancellation, discharge, or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing the Claim.

**9.4     Setoffs**.    Except as otherwise provided herein, nothing contained in the Plan shall constitute a waiver or release by Debtor of any rights of setoff the Estate may have against any Person.

**ARTICLE X**

**CONDITIONS PRECEDENT TO EFFECTIVE DATE**

**10.1     Conditions Precedent to Effectiveness**.    The Plan shall not become effective and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or such conditions shall have been waived pursuant to Section 10.2 hereof:

(a)     the Confirmation Order, in form and substance reasonably acceptable to Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)    each of the Plan Documents, in form and substance reasonably acceptable to Debtor; (i) shall have been executed, delivered and, if necessary, properly recorded; (ii) shall have become effective; and (iii) shall have been filed with the Bankruptcy Court;

(c)    all actions, other documents and agreements necessary to implement the Plan and the assets sale set forth above shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective; and

(d)    the Debtor shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date, including without limitation, sufficient Cash to establish the Disputed Claims Reserve as to those claims to be paid by Debtor or the Reorganized Debtor.

**10.2    Waiver of Conditions**.  Debtor may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in this Section, except that Debtor may not waive the condition that Debtor will have sufficient Cash to meet all of Debtor's payment and funding obligations under the Plan on the Effective Date, and to establish the Disputed Claims Reserve corresponding to Debtor, as set forth in Section 6.5(a) hereof.

## ARTICLE XI

## RETENTION OF JURISDICTION

**11.1    Retention of Jurisdiction**.  After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to the Bankruptcy Case and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code:

(a)    to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim;

(b)      to hear and determine any and all applications by Professionals for compensation and reimbursement of expenses pursuant to Section 2.2(c) hereof;

(c)      to hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting therefrom;

(d)      to determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date;

(e)      to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

(f)      to enforce the provisions of the Plan subject to the terms thereof;

(g)      to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(h) to determine such other matters as may be provided for in the Confirmation Order.

## ARTICLE XII

## MISCELLANEOUS

**12.1**   **Continuation of Injunctions or Stays Until Effective Date**.  All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**12.2**   **Exemption from Transfer Taxes**.    In accordance with Section 1146(c) of the Bankruptcy Code,

(a)     the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan,

(b)     the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money, or other security interest under, in furtherance of, or in connection with the Plan,

(c)     the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, or other similar tax or governmental assessment.  Consistent with the foregoing, officials of a governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

**12.3    <u>Amendment or Modification of the Plan</u>.**  Alterations, amendments, or modifications of the Plan may be proposed in writing by Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered,

amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Debtor or the Reorganized Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit thereto or in any Plan Document.

**12.4    Severability**.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon Debtor's request, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable according to its terms.

**12.5    Revocation or Withdrawal of the Plan**.  Debtor reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If Debtor revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against

Debtor or any other Person or to prejudice in any manner Debtor's rights or those of any Person in any further proceedings involving Debtor.

**12.6     Binding Effect**.  The rights, duties, and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**12.7     Notices**.  All notices, requests, and demands to or upon Debtor shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

San Juan Resort Owners, Inc.
1428 Paz Granela Ave.
Urb. Santiago Iglesias
San Juan, PR 00921
Tel.: 787-749-9502
Fax: 866-954-6196

With a copy to:

William Vidal Carvajal Law Office, P.S.C.
MCS Plaza, Suite 801
Ponce de León Ave.
San Juan, PR  00918
Tel.: 787-764-6867
Fax:    787-764-6496
E-mail: william.m.vidal@gmail.com

**12.8     Governing Law**.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan or the Plan Documents provide otherwise, the rights and obligations arising under this Plan shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Puerto Rico.

**12.9     Withholding and Reporting Requirements**.  In connection with the consummation of the Plan, Debtor shall comply with all withholding and reporting requirements imposed by any

federal, state, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**12.10    Plan Documents**.  Upon filing with the Bankruptcy Court, the Plan Documents may be inspected at the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims may obtain a copy of the Plan Documents upon written request to Debtor in accordance with Section 12.7 hereof.  Any Plan Documents are incorporated into and made a part of the Plan, as if fully set forth herein.

**12.11   Post-Confirmation Fees, Final Decree**.  Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930(a)(6) and the filing of post-confirmation reports, until a final decree is entered or as otherwise provided by the Bankruptcy Court.  A final decree shall be entered as soon as practicable after initial distributions have commenced under the Plan.

**12.12   Headings**.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**12.13   Filing of Additional Documents**.  On or before substantial consummation of the Plan, Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**12.14   Inconsistency**.  In the event of any inconsistency between the Plan and the Disclosure Statement, the Plan Documents or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

## ARTICLE XIII

## PROVISIONS FOR INCLUSION IN THE CHARTER OF THE REORGANIZED DEBTOR

San Juan Resort or the Reorganized Debtor's Board of Directors shall take such action as may be necessary to the end that San Juan Resort or the Reorganized Debtor's charter shall contain, if applicable:

A.      Provisions prohibiting San Juan Resort or the Reorganized Debtor from issuing non-voting stock, and providing, as to the classes of San Juan Resort and/or the Reorganized Debtor's securities possessing voting power, for the fair and equitable distribution of such power among such classes, including, in the case of any class of stock having preference over other stock with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends; and

B.      Provisions which are fair and equitable and in accordance with sound business and accounting practices, with respect to the terms, positions, rights and privileges of the several classes of San Juan Resort or the Reorganized Debtor's securities, including without limiting the generality of the foregoing, provisions with respect to the issuance, acquisition, purchase and payments of dividends thereon; and provisions with respect to the making not less than once annually, of periodic reports to equity security holders which shall include profit and loss statements and balance sheets prepared in accordance with sound business and accounting practices.

C.      Provisions that San Juan Resort or the Reorganized Debtor will not pay dividends to its shareholder, nor to any other shareholder, which may exist in the future, until creditors are paid in accordance with the Plan.

San Juan Resort Owners, Inc.
Plan of Reorganization

Case No. 15-01627 (MCF)
Page 29

Dated: April 17, 2015.

**San Juan Resort Owners, Inc.**

By: _____

**Luis A. Carreras Pérez**
**President**